UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
GALVSTAR HOLDINGS, LLC and DSB
HOLDINGS, LLC,

                    Plaintiffs,

               -against-

HARVARD STEEL SALES, LLC and
JEREMY JACOBS,

                    Defendants.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

16 Civ. 7126 (GBD)

GEORGE B. DANIELS, United States District Judge:

Before this Court is Defendant Harvard Steel Sales, LLC's ("Harvard Steel's") motion to stay this action pending arbitration. Because Harvard Steel vigorously litigated this action in this Court, and waited nearly two years to file the instant motion, Harvard Steel's motion to stay the action pending arbitration is DENIED.

## I. PROCEDURAL HISTORY

Harvard Steel (and then co-defendant Jeremy Jacobs) commenced this action in this Court when it removed DSB Holdings, LLC's ("DSB's") (and then co-plaintiff Galvstar Holdings LLC's ("Galvstar's")) Amended Complaint, from New York State Supreme Court, on September 13, 2016. (Not. of Removal, ECF No. 1.) Shortly thereafter, on November 18, 2016, Harvard Steel moved to dismiss this action in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, ECF No. 12.) This Court granted Harvard Steel's motion and dismissed all claims in this action on April 20, 2017. (Mem. Decision and Order ("Order"), ECF No. 21.) Galvstar and DSB appealed this Court's decision to the United States Court of Appeals for the Second Circuit on August 15, 2017. (Not. of Appeal, ECF No. 22.) On February 22, 2018, the Second Circuit affirmed this Court's ruling dismissing all claims, except for the claim that

Harvard Steel violated the implied covenant of good faith and fair dealing inherent in its Toll Processing Agreement ("TPA") with DSB, which it remanded for further proceedings. (Summary Order, ECF No. 25, at 6–7.) Harvard Steel sought a re-hearing of the Second Circuit's order, which was denied. (Plaintiff's Opp. to Def's Motion to Stay Action Pending Arbitration ("Opp."), ECF No. 48 at 2.) Harvard Steel timely answered DSB's complaint on March 23, 2018. (Answer to Compl. ("Answer"), ECF No. 32.) Almost four months later, on July 12, 2018, Harvard Steel filed this motion to stay this action pending arbitration. (Mot. to Stay Action Pending Arb. ("Mot. to Stay"), ECF No. 42.)

## II. FACTUAL BACKGROUND

Harvard Steel chose to litigate this case in this Court. Prior to this Court's order dismissing Galvstar's and DSB's claims, Harvard Steel participated in an initial pretrial conference on September 14, 2016, requested a 60 (sixty) day extension of time to respond to the complaint on September 16, 2016 (Letter from Joseph Hess to this Court on September 6, 2016, ECF No. 5), filed a proposed case management plan and Rule 26(f) scheduling order on November 15, 2016 (Civil Case Management Plan and Scheduling Order, ECF No. 10), filed its Motion to Dismiss all claims on November 18, 2016, and defended its motion in oral argument on February 15, 2017.

During this time, Harvard Steel also engaged in discovery with Galvstar and DSB, including exchanging Rule 26(a) disclosures on December 19, 2016 (Decl. of Matthew Sheppe in Opp. of Def's Mot. to Stay ("Sheppe Decl."), ECF No. 47, at ¶ 4), and requesting a 45-day stay of discovery, as well as an extension of the discovery deadlines, on March 9, 2017, (Letter from Joseph Hess to this Court on March 8, 2017, ECF No. 18).

When the Second Circuit remanded DSB's implied covenant of good faith and fair dealing claim against Harvard Steel on February 22, 2018—almost a year and a half after the litigation began in this Court—Harvard Steel continued to litigate this case and engage in discovery for five

months before filing this motion. Not only did it answer the Complaint on March 23, 2018, it also attended a status conference on March 27, 2018, where it asked this Court for the assistance of Magistrate Judge Moses with mediation.[1] Harvard Steel also served interrogatories, requests for production of documents, and requests for admission on Plaintiff on March 29, 2018. (Sheppe Decl., Ex. A.) DSB responded to these requests in May of 2018, and after exchanging email communications about the adequacy of its responses, it supplemented them by responding to certain interrogatories via email on June 5, 2018. (*Id.* at ¶ 5, Ex. B.) Harvard Steel also responded to DSB's document requests on June 15, 2018. (*Id.*, Ex. G.) Around this time the parties were also involved in a dispute over the propriety of taking the deposition of Gregory Goad, a former employee of Harvard Steel, and his wife Theresa Goad.[2] (*Id.* at ¶ 7–8.)

It was not until June 20, 2018 that Harvard Steel first advised DSB that it intended to move to compel arbitration during a meet and confer over the aforementioned discovery disputes, four weeks before it filed this motion. (*Id.* at ¶ 12.) In fact, in the nearly two years of litigation prior to this motion, Harvard Steel only mentioned the Toll Processing Agreement's arbitration provision, in passing, on two occasions: (1) in a footnote on the last page of the Memorandum of Law in support of its Motion to Dismiss,[3] and (2) as the "sixteenth affirmative defense" in its

---

[1] The settlement conference before Magistrate Judge Moses was originally scheduled on June 28, 2018. (Order Scheduling Settlement Conf., ECF No. 34.) However, it was first adjourned to August 21, 2018 (Order Granting Letter Mot. to Adjourn Conf., ECF No. 37), and then finally took place on October 3, 2018 (Order Denying Letter Motion for Local Rule 37.2 Conf., ECF No. 52), while this motion was pending. A second settlement conference took place at the request of both parties while this motion was pending on October 17, 2018. (Order Scheduling Settlement Conf., ECF No. 59).

[2] Magistrate Judge Moses ordered the parties to proceed with the deposition of Greg Goad during a telephone conference on August 2, 2018. The deposition took place, with Harvard's participation, on August 23, 2018.

[3] "To the extent that the Court declines to dismiss any claims arising out of or relating to the Toll Processing Agreement, Defendants reserve the right to enforce the arbitration provision of the Toll Processing Agreement." (Mem. of Law in Supp. of Mot. to Dismiss ("Mem. of Law"), ECF No. 13, at 24, n. 15.)

Answer.[4] Furthermore, Harvard Steel has not initiated arbitration proceedings, or asked this Court to compel arbitration.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") creates a "presumption of arbitrability," whereby an arbitration agreement is "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995). In this way, the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The purpose of the arbitrability presumption is "to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Schnabel v. Trilegiant Schnabel*, 697 F.3d 110, 118 (2d Cir. 2012)).

This arbitrability presumption means "that any doubts concerning whether there has been a waiver [of arbitration] are resolved in favor of arbitration" and "[are] not to be lightly inferred." *Leadertex*, 67 F.3d at 25 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see also Thyssen, Inc. v. Calypso Shipping Corp. S.A.*, 310 F.3d 102, 104–105 (2d Cir. 2002) (citation omitted). In light of that high bar, the Second Circuit considers three factors "[i]n determining whether a party has waived its right to arbitration: . . . (1) the time elapsed from when litigation was commenced until the request for arbitration, (2) the amount of litigation to date, including motion practice and discovery, and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merril Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)

---

[4] "[T]he operative contracts attending Plaintiff's claims, the Toll Processing Agreement, provide for arbitration of all claims related to the Toll Processing Agreement. . . Accordingly, Defendant reserves the right to demand dismissal of this action in favor of individual arbitration of Plaintiff's claims." (Answer at 28.)

-4-

(quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001)).

"The key to a waiver analysis is prejudice." *Thyssen*, 310 F.3d at 105 (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)). In the Second Circuit, a delayed arbitration request can cause "two types of prejudice: substantive prejudice, and prejudice due to excessive cost and time delay." *La. Stadium and Expo. Dist.*, 626 F.3d at 159; *see also*, *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997)) (defining prejudice as "the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue").

## IV. HARVARD STEEL'S MOTION TO STAY IS DENIED

Harvard Steel's motion to stay this action pending arbitration is DENIED because it waived its right to arbitrate under the Second Circuit's three-factor test. First, a substantial amount of time elapsed between the start of this action and Harvard Steel's arbitration request. Second, the parties engaged in extensive motion practice and discovery in that time. Finally, staying this proceeding to allow Harvard Steel to now pursue arbitration would cause DSB both substantive prejudice and prejudice in the form of excessive cost and time delay.

### 1. Substantial Time Has Passed Since The Beginning Of This Litigation.

Harvard Steel filed the instant motion seeking to stay this action pending arbitration nearly two years after it removed DSB's Amended Complaint on September 13, 2016. Harvard Steel provides no reasonable explanation as to why it waited this long, despite having ample opportunity to seek arbitration.

Courts in this district typically grant motions to compel arbitration where little or no time elapsed between the time the action commenced and the time a party requests arbitration. *See*

*Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 101 (S.D.N.Y 2017) (granting motion to compel arbitration where "no time at all elapsed between Plaintiff's initiation of this action and their request for arbitration"); *Tokio Marine & Fire Ins. Co., Ltd. v. M/V Saffron Trader*, 257 F. Supp. 2d 651, 655 (S.D.N.Y. 2003) (granting motion to compel arbitration where "[it] was requested at the outset of litigation in the Complaint.").

Furthermore, the Second Circuit has held time and time again that delays to seek arbitration of even a couple of months can cause prejudice so long as the parties actively litigate arbitrable issues in the meantime. *See, e.g., PPG Indus., Inc.*, 128 F.3d at 108 (finding that a five-month delay caused prejudice); *La. Stadium and Expo. Dist.*, 626 F.3d at 159 (finding that an eleven-month delay caused prejudice); *Com-Tech Assocs. v. Computer Assocs. Intern., Inc.*, 938 F.2d 1574, 1576 (2d Cir. 1991) (finding that an eighteen-month delay caused prejudice); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82 (2d Cir. 1998) (finding that a fifteen-month delay caused prejudice).

Accordingly, a nearly two-year delay to seek a stay in favor of arbitration on the part of Harvard Steel weighs in favor of finding that it waived its right to arbitrate.

### 2. The Parties Engaged In Extensive Discovery and Motions.

Not only did Harvard Steel wait nearly two years to seek arbitration, it also vigorously litigated arbitrable claims during that time, including filing a substantive motion to dismiss all claims. In this regard, this case is very similar to *Technology in Partnership, Inc. v. Rudin*, where the court found that the defendant waived its right to arbitrate after litigating a motion to dismiss on the merits, "all while having knowledge of the arbitration provision." 538 F.App'x. 38, 40 (summary order) (2d Cir. 2013). Moreover—although it was DSB who appealed this Court's dismissal—Harvard Steel sought a re-hearing of the appeal after the Second Circuit vacated and

remanded this Court's dismissal of DSB's implied covenant of good faith and fair dealing claim, further delaying its request for arbitration.

Harvard Steel relies on *Murray v. UBS Sec., LLC* to argue that litigating its motion to dismiss alone is not sufficient basis on which to find waiver. 2014 U.S. Dist. LEXIS 9696, No. 12-cv-5914, at *17–18 (S.D.N.Y. Jan. 27, 2014). But in that case, unlike here, the defendant moved to compel arbitration on the same day it filed its answer, which meant that "litigation efforts during that time period were modest, and focused largely (if not exclusively) on Defendants' motion to dismiss. No initial pretrial conference was held, nor was any case management plan or discovery schedule entered." *Id.* at 14. All of the other cases cited by Harvard Steel for this proposition are to the same effect. *See Sweater Bee by Baniff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) (defendant moved to arbitrate alongside its answer); *Senisi v. John Wiley & Sons, Inc.*, 2015 U.S. Dist. LEXIS 6827, No. 13-cv-3314, at *1 (S.D.N.Y. Jan 21, 2015) (defendant moved to dismiss part of plaintiff's complaint in favor of arbitration).

Contrary to *Murray*, Harvard Steel participated in an initial pretrial conference and a subsequent status conference, filed a proposed case management plan and scheduling order, requested a stay of discovery and an extension of the discovery deadlines, and exchanged Rule 26(a) disclosures with Plaintiffs. It also served and responded to interrogatories, requests for production of documents, and requests for admission. The parties engaged in a discovery dispute over the deposition of Gregory Goad, and asked this Court to order mediation with Magistrate Judge Moses. As a result, much like the defendant in *Technology in Partnership, Inc*, Harvard Steel forced DSB to not only defend against Harvard Steel's motion to dismiss, but also to engage in extensive pretrial discovery after that motion was resolved. *See* 538 F.App'x at 40; *see also PPG Industries, Inc.*, 128 F.3d at 109 (manufacturer "engaged in discovery," including interrogatories and subpoenas for financial records and tax returns); *Com-Tech Assocs.*, 938 F.3d

at 1576 ("the parties engaged in extensive pre-trial discovery for nearly two years"); *S & R Co. of Kingston*, 159 F.3d at 83–84 (The parties exchanged document productions and numerous interrogatories, took several depositions, negotiated a joint civil case management plan, resorted to the court to resolve discovery disputes, and participated in two settlement conferences.).

Indeed, Harvard Steel "engage[d] in protracted litigation," such as "extensive pretrial discovery" and "substantive motions," over the course of many months before seeking a stay, which weighs in favor of finding that it waived its right to arbitrate. *PPG Industries, Inc.*, 128 F.3d at 107.

### 3. A Stay Would Cause Substantive Prejudice.

Granting this motion to stay the proceedings pending arbitration would cause DSB substantive prejudice in two ways: (1) it has provided Harvard Steel with discovery that it would not otherwise have access to in arbitration, and (2) it would deprive DSB of its remand victory in the Second Circuit.

As detailed above, Harvard Steel "[took] advantage of pre-trial discovery not available in arbitration," such as serving requests for production of documents, interrogatories, requests for admission, and taking Gregory Goad's deposition. *PPG Industries Inc.*, 128 F.3d at 109; *see also, Zwiterse Maatschappij Van Levensverzekering En Lijfrente v. ABN Intern. Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d. Cir. 1993) (finding prejudice where defendant "secured for himself the benefits of pretrial discovery that is often unavailable in an arbitral forum"). Unlike *Leadertex*, where the court found that the plaintiff was not prejudiced because the defendant "obtained no facts in discovery that would have been unavailable in arbitration," Harvard Steel has obtained documents from DSB, responses to interrogatories, responses to requests for admission, and

deposition testimony from Gregory Goad, all of which would not be available in arbitration.[5] 67 F.3d at 26.

Granting this motion would also deprive DSB of its hard-fought appellate victory, in which it convinced the Second Circuit to remand its implied covenant of good faith and fair dealing claim for further proceedings in this Court. In this regard, this case is very similar to *La. Stadium and Expo. Dist.*, where the court found that granting the plaintiff's motion to compel arbitration would deprive the defendants of several "key procedural victories."[6] 626 F.3d at 159–160.

Accordingly, granting this motion to stay pending arbitration would substantively prejudice DSB, underscoring that Harvard Steel waived its right to arbitrate.

### 4. A Stay Would Cause Prejudice In The Form Of Excessive Cost And Time Delay.

After removing the case to this Court, Harvard Steel engaged in "substantial litigation on the merits," which resulted in a significant expenditure of time and costs for DSB. *S&R Co. of Kingston*, 159 F.3d at 84. In fact, as described in detail above, Harvard Steel's delayed request prejudiced DSB by requiring it to engage in costly discovery exchanges and disputes, defend against a motion to dismiss, appeal this Court's decision to the Second Circuit, and participate in two settlement conferences. *See La. Stadium and Expo. Dist.*, 626 F.3d at 160 (finding that the defendants were prejudiced because "the parties spent a significant amount of time and expense

---

[5] The TPA provides that "[a]ny controversy or claim arising out of or related to the Agreement shall be determined by arbitration . . . in accordance with the International Rules of the American Arbitration Association." (Mem. of Law, Ex. 1, at 5.) These rules provide for very limited discovery, which includes only exchanging documents the parties plan to rely on, as well as no depositions, interrogatories, or requests for admission. *See Int. Arb. R.*, Article 21, ¶¶ 3–4, 10.

[6] In that case the plaintiffs sought arbitration after the defendants had successfully litigated a motion to remove the case to federal court in Louisiana, a motion to transfer the case from the Eastern District of Louisiana to the Southern District of New York, and a motion to consolidate all related cases in a single MDL. They also submitted a letter to the Plaintiff identifying the deficiencies in its second amended complaint, and began work on a motion for judgment on the pleadings. *See La. Stadium and Expo. Dist.*, 626 F.3d at 159–160.

litigating before [plaintiff] sought arbitration against [defendants]"); *Com-Tech Assocs.*, 938 F.3d at 1577–1578 (finding that the plaintiffs were prejudiced because they "were put to the expense of not only engaging in extensive depositions, but also of defending motions for judgment on the pleadings and summary judgment.").

Accordingly, "[b]y engaging in discovery and filing substantive motions" that required a significant amount of time and costs, Harvard Steel "evidenced a preference for litigation that supports a finding of waiver." *PPG Industries, Inc.*, 128 F.3d at 109.

## V. CONCLUSION

Harvard Steel's motion to stay this action pending arbitration is DENIED. The Clerk of Court is instructed to close the motion at ECF No. 42.

Dated: December 13, 2018
New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge